Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES COSTELLO, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CNX MIDSTREAM PARTNERS LP., CNX MIDSTREAM GP LLC. CNX RESOURCES CORPORATION. CNX RESOURCES HOLDINGS LLC, NICHOLAS J. DEIULIIS, RAYMOND T. BETLER, CHAD A. GRIFFITH, JOHN E. JACKSON, JOHN A. MAHER, DONALD W. RUSH, and HAYLEY F. SCOTT,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>(1)   Breach of Fiduciary Duties<br>(2)   Aiding and Abetting<br>(3)   Breach of Implied Covenant of Good Faith and Fair Dealing<br>(4)   Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(5)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, James Costello ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this unitholder class action on behalf of himself and all other public unitholders of CNX Midstream Partners LP ("CNX Midstream" or the "Partnership"), against CNX Midstream, CNX Midstream GP LLC ("CNX GP"), the Partnership's Board of Directors (the "Board" or the "Individual Defendants,"), CNX Resources Corporation ("Parent"), and CNX Resources Holdings LLC ("Merger Sub," and collectively with Parent, "CNX," and collectively with CNX Midstream and CNX GP, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Partnership to CNX as a result of an unfair process for an unfair price, and to enjoin an upcoming proposed all unit transaction valued at approximately $357 million (the "Proposed Transaction").

2.       The terms of the Proposed Transaction were memorialized in a July 27, 2020 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, a subsidiary of CNX will commence a tender offer to acquire all of the outstanding common units of CNX Midstream at approximately 0.88 shares of CNX common stock.  As a result of the Proposed Transaction, CNX Midstream unitholders will be frozen out of any interest in the surviving entity.

3.       Thereafter, on August 12, 2020, CNX filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.       The Defendants have violated CNX Midstream's Third Amended and Restated Agreement of Limited Partnership dated January 29, 2020 ("LPA," as further described below) and breached their fiduciary duties to Plaintiff and other CNX Midstream unitholders by agreeing to the Proposed Transaction for inadequate consideration without adequately shopping the Partnership. As described in more detail below, given CNX Midstream's recent solid performance as well as its strong future growth prospects, the proposed consideration unitholders will receive is inadequate and undervalues the Partnership.

5.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Partnership significant and immediate benefits with no thought to the Partnership's public unitholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Partnership Board Members and executive officers will be able to exchange all Partnership equity awards for the merger consideration.

6.     The dubious nature of the Proposed Transaction is laid bare considering the existence of sharp price fluctuations of CNX common stock since the announcement of the deal. Here, the Merger Consideration is comprised entirely of CNX common stock exchanged at a *fixed* exchange ratio of 0.88 which means that CNX Midstream unitholders will receive 0.88 shares of CNX common stock as a portion of the Merger Consideration in exchange for each of their CNX Midstream shares, regardless of CNX's stock price at the close of the transaction.  Thus, the consideration payable to CNX Midstream's unitholders is not insulated from fluctuations in CNX's stock price, and unitholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.  The fact that the Proposed Transaction does not guarantee CNX Midstream's public unitholders protection from fluctuations in CNX's per share price seems to be of no concern to the Defendants.

7.     In addition, the Registration Statement indicates that the Board did not conduct a market check or even consider other possible strategic alternatives for CNX Midstream.  Such a sales process, or lack thereof, clearly indicates that the only end-goal acceptable to the Defendants was an acquisition of CNX Midstream by CNX.

8.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell CNX Midstream without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or CNX without regard for CNX Midstream public unitholders.  Accordingly, this action seeks to enjoin the Proposed Transaction

and compel the Individual Defendants to properly exercise their fiduciary duties to CNX Midstream unitholders.

9.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Partnership significant and immediate benefits with no thought to the Partnership's public unitholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Partnership Board Members and executive officers will be able to exchange all Partnership equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

10.     In violation of Federal Securities laws and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on August 12, 2020 with SEC in an effort to solicit unitholders to vote their CNX Midstream units in favor of the Proposed Transaction.   The Registration Statement is materially deficient, deprives CNX Midstream unitholders of the information they need to make an intelligent, informed and rational decision of whether to vote their units in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for CNX Midstream and CNX, provided by CNX Midstream and CNX to the CNX Midstream Conflicts Committee and the Conflicts Committee's financial advisor Intrepid Partners LLC ("Intrepid") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by financial advisor, Intrepid.

11.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of law by Defendants.

**PARTIES**

12.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a CNX Midstream unitholder.

13.     Defendant CNX Midstream is a master limited partnership that owns, operates, develops and acquires gathering and other midstream energy assets to service natural gas production in the Appalachian Basin in Pennsylvania and West Virginia. CNX Midstream is incorporated under the laws of the State of Delaware and has its principal place of business at 1000 CONSOL Energy Drive, Canonsburg, PA 15317.  Shares of CNX Midstream common units are traded on the NasdaqGS under the symbol "CNXM."

14.     Defendant Nicholas J. DeIuliis ("DeIuliis") has been a Director of GP at all relevant times.  In addition, DeIuliis serves as the Chief Executive Officer ("CEO") of CNX GP and Chairman of the Board. DeIuliis also serves as the President, a Director, and CEO of CNX.

15.     Defendant Chad A. Griffith ("Griffith") has been a director of the GP at all relevant times. In addition, Griffith serves as the Chief Operating Officer ("COO") and President of CNX GP.

16.     Defendant Raymond T. Betler ("Betler") has been a director of the GP at all relevant times.

17.     Defendant John E. Jackson ("Jackson") has been a director of the GP at all relevant times.

18.     Defendant John A. Maher ("Maher") has been a director of the GP at all relevant times.

19.     Defendant Donald W. Rush ("Rush") has been a director of the GP at all relevant times.  In addition, Rush serves as the Chief Financial Officer ("CFO") of CNX GP.

20.     Defendant Hayley F. Scott ("Scott") has been a director of the GP at all relevant times.

21.     Defendants identified in ¶¶ 13 - 20 are collectively referred to as the "Individual Defendants."

22.     Defendant CNX GP serves as the General Partner of the Partnership.

23.     Defendant CNX is one of the largest independent natural gas exploration, development and production companies, with operations centered in the major shale formations of the Appalachian basin.  CNX was founded in 1860 and is headquartered in Canonsburg, Pennsylvania. Parent common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "CNX."

24.     Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Among other things, the Partnership's common units trade on the NASDAQ exchange, which is also headquartered in New York County.

CLASS ACTION COMPLAINT

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

28.     By reason of Individual Defendants' positions with the Partnership as officers and/or directors of CNX GP, they are in a fiduciary relationship with Plaintiff and the other public unitholders of CNX Midstream and owe them, as well as the Partnership, at a minimum an implied contractual duty of good faith and fair dealing.

29.     The relationship between CNX Midstream's Board and its public unitholders is, in part, governed by the LPA – *i.e.*, the Third Amended and Restated Agreement of Limited Partnership of CNX Midstream Partners LP, dated January 29, 2020.

30.     Section 2.01 of the LPA states: "Except as expressly provided to the contrary in this Agreement, the rights, duties, liabilities and obligations of the Partners and the administration, dissolution and termination of the Partnership shall be governed by the Delaware [Revised Uniform Limited Partnership Act, 6 Del C. Section 17-101, et seq., as amended, supplemented or restated from time to time, and any successor to such statute ("Delaware Act")]."  The LPA does not expressly limit the fiduciary obligations of the Individual Defendants in connection with their approval of any merger, consolidation, or change in corporate control.

31.     Moreover, under the Delaware Act, partnership agreements in Delaware cannot "eliminate the implied contractual covenant of good faith and fair dealing." *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 100 (Del. Jul. 22, 2013).

32.     Under Delaware law, in any situation where directors of a publicly-traded corporation undertake a transaction that will result in either (i) a change in corporate control, or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, including a significant premium at the highest price attainable in the market.  Thus, in order to diligently

comply with their fiduciary duties, the Individual Defendants may not take any action that:

    a.   adversely affects the value provided to the corporation's shareholders;

    b.   favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

    c.   adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

    d.   will provide the Individual Defendants with preferential treatment at the expense of the interests of the Partnership's public shareholders;

    e.   participating in any transaction where the Individual Defendants' loyalties are divided;

    f.   participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public unitholders of the partnership; and/or

    g.   unjustly enriching themselves at the expense or to the detriment of the public unitholders.

33.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are violating their fiduciary duties of good faith, loyalty, due care, fair dealing and candor owed to Plaintiff and other public unitholders of CNX Midstream under both the Partnership's LPA and under governing Delaware law, and have failed to provide Plaintiff and other CNX Midstream unitholders with true, full, and fair disclosures concerning the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of all holders of CNX Midstream common units who are being and will be harmed by the Individual Defendants' actions, described herein (the "Class"). Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any Defendant.

35.    This action is properly maintainable as a class action for the following reasons.

a.  The Class is so numerous that joinder of all members is impracticable.  As of July 30, 2020, there were over 89 million units of common units outstanding.

b.  There are questions of law and fact that are common to the Class, including:

i.  Whether the Defendants have violated federal securities laws;

ii.  Whether the Individual Defendants breached their fiduciary duties to the Class by entering into the Proposed Transaction, which is unfair to the Partnership's public unitholders and was entered into as a result of a flawed, inadequate and unfair process;

iii.  Whether the Proposed Transaction is unfair to the Class, in that the price is inadequate and unfair and does not reflect the fair value that could be obtained under the circumstances; and

iv.  Whether the Class is entitled to injunctive relief and/or damages as a result of the wrongful conduct committed by the Defendants.

c.  Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other Class members and Plaintiff has the same interests as the

other Class members.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

d.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

36.  To the extent Defendants take further steps to effectuate the Proposed Transaction, preliminary and/or final injunctive relief on behalf of the Class as a whole will be entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class

## **SUBSTANTIVE ALLEGATIONS**

*Partnership Background*

37.  CNX Midstream owns, operates, develops, and acquires natural gas gathering and other midstream energy assets in the Marcellus Shale and Utica Shale in Pennsylvania and West Virginia.

38.  The Partnership operates through two segments, Anchor Systems and Additional Systems. As of December 31, 2019, the Partnership operated 18 compression and dehydration facilities. It also operates condensate handling facilities with handling capacities of 2,500 barrels per day in Majorsville, Shirley, and West Virginia that provide condensate gathering, collection, separation, and stabilization services. CNX Midstream GP LLC serves as a general partner of the Partnership.

39.  The Partnership's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction,

indicated sustained and solid financial performance even during the global COVID-19 pandemic. For example, in an April, 2020 Earnings Call announcing its 2020 Q1 financial results, the Partnership highlighted $60.4 million adjusted-EBITDA and $46.9 million of distributable cash flow.

40.     Speaking on these positive results, Defendant Griffith, Executive Vice President and Chief Operating Officer, commented on the Partnership's positive outlook through the pandemic, "First, the gas strip is very strong heading in the winter in 2021. The producers with wet-wells, both gas price and NGL price play a role in the equation. So strong gas prices can offset weaker NGL prices or vice versa. Second, we see the oil price and fuel demand loss is temporary. We are already beginning to see signs that the US is ready to begin returning to some level of normalcy and we expect demand to recover alongside. Meanwhile, the collapsible oil prices has resulted in significantly large reductions in rig and frac activity in oil plays such as the Permian, which also provides significant amount of NGLs and associated gas in direct competition with the NGLs and gas from Appalachian."

41.     CNX Midstream has seen exponential financial growth dating back to its record year in 2019. In its 2019 Q4 and Full Year 2019 financial results press release, Partnership noted its Net Income for the fourth quarter of 2019 were $48.5 million compared with $42.6 million for the fourth quarter of 2018. The Full Year Net Income increased in 2019 to $174.3 million from $134 million for 2018.

42.     Speaking on these positive results, Defendant CEO DeIuliis, commented on the Partnership's positive financial results as follows, "The team finished the year with a strong quarter, capping another year of growth and impressive financial and operating performance for CNX Midstream. This marks the 19th consecutive quarterly cash distribution increase at the targeted 15% annual growth rate. For the full year 2019, CNXM reported a 30% increase in net income, a 33% increase in adjusted EBITDA, and distributable cash flow grew by 31% over 2018 results."

43.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by CNX Midstream.  Clearly, based upon these positive financial results and outlook, the Partnership is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

44.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused CNX Midstream to enter into the Proposed Transaction for insufficient consideration

***The Flawed Sales Process***

45.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Partnership to CNX.

46.     Notably, it appears that no market check was conducted by Partnership, the Conflicts Committee of the CNX Midstream Board, or Intrepid during the sales process. Furthermore the Registration Statement does not explain this oversight.

47.     The Registration Statement is also unclear as to whether CNX Midstream and CNX entered into any sort of non-disclosure agreements as part of the sales process, if said agreement contained any standstill restrictions, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

48.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

49.     On July 27, 2020, CNX and CNX Midstream issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

CLASS ACTION COMPLAINT

**PITTSBURGH, PA (July 27, 2020)** – CNX Resources Corporation (NYSE: CNX) ("CNX") and CNX Midstream Partners LP (NYSE: CNXM) ("CNX Midstream" or the "Partnership") today announced that they have entered into a definitive merger agreement pursuant to which CNX will acquire all of the outstanding common units of CNX Midstream that it does not already own in exchange for CNX common stock valued at approximately $357 million, based on the most recent closing price of CNX common stock.

Under the merger agreement, each outstanding common unit of CNX Midstream that CNX does not already own will be converted into 0.88 shares of CNX common stock, representing a 15% premium to the average exchange ratio during the 30 trading days ended July 24, 2020.

"We believe that this take-in transaction of CNX Midstream Partners is the optimal solution for all relevant stakeholders given the near- and long-term view of the MLP market," commented Nicholas J. DeIuliis, president and CEO. "We expect the combined entity to be an even stronger company with a lower cost of capital and increased investable free cash flow."

Don W. Rush, CFO, added, "Following the completion of the transaction, CNX is expected to be the lowest cost producer in the Appalachian Basin, with increased operational flexibility and basin leading operational metrics. Unitholders of CNX and unitholders of CNX Midstream are expected to benefit from a combination of synergies including improved equity trading liquidity, enhanced financial flexibility to optimize cash flows, and an improved credit profile."

Additional Transaction Terms and Details

Pursuant to the terms of the merger agreement, CNX will acquire all of the approximately 42.1 million outstanding common units of CNX Midstream that it does not already own at a fixed exchange ratio of 0.88 shares of CNX common stock for each publicly held common unit of CNX Midstream. CNX Midstream common units will no longer be publicly traded after the transaction. In aggregate, CNX will issue approximately 37 million shares in connection with the proposed transaction, representing approximately 17 percent of the total shares outstanding of the pro forma combined entity.

Following completion of the transaction, all senior notes of CNX Midstream will remain outstanding and no additional payments will be made to CNX in connection with the elimination of the incentive distribution rights transaction from January of this year. The transaction terms were negotiated, reviewed and approved by the Conflicts Committee of the CNXM Board and approved by the CNXM Board. The CNX Midstream Conflicts Committee is composed of the independent members of the CNXM Board. The Board of Directors of CNX also approved the merger agreement.

Conditions to Closing

Subject to customary approvals and conditions, the transaction is expected to close in the fourth quarter of 2020. The transaction is subject to majority approval by CNX Midstream common unitholders and the effectiveness of a registration statement related to the issuance of the new CNX shares to CNX Midstream's unitholders. Pursuant to a support agreement entered into in connection with the transaction, CNX has agreed to vote the CNXM common units that it owns in favor of the transaction. CNX currently owns approximately 53.1% of the outstanding common units.

### *The Inadequate Merger Consideration*

50.     Significantly, the Partnership's financial prospects and opportunities for future growth, and synergies with CNX establish the inadequacy of the merger consideration.

51.     First, the compensation afforded under the Proposed Transaction to Partnership unitholders significantly undervalues the Partnership.  The proposed valuation does not adequately reflect the intrinsic value of the Partnership.  Moreover, the valuation does not adequately take into consideration the Partnership's potential financial success when continuing as a publicly traded company.

52.     Specifically, the Partnership's units have traded as high as $16.94 per unit within the past fifty-two weeks, and traded around $16.87 a unit as recently as January 16, 2020, about 2 times more than the consideration in Proposed Transaction.

53.     Additionally, CNX Midstream's future success is extremely likely, given the consistent positive financial results it has posted over the past several quarters.  The opportunity to invest in such a Partnership on the rise is a great coup for the Partnership unitholders, however they are losing the ability to cash in on its future success by going private.

54.     Motley Fool released an article about the Proposed Transaction describing CNX's rational for the merger, saying, "CNX Resources believes that the take-private transaction is the best solution, given the near- and long-term view of the MLP market. Investors have abandoned these vehicles due to underperformance and tax issues, which has weighed on valuations across the sector. CNX Resources believes that by fully integrating its midstream assets, it will become the lowest-cost producer in the Appalachian Basin. It also sees the deal increasing its operational flexibility and free cash flow."

55.   Clearly, while the deal will be beneficial to CNX it comes at great expense to Plaintiff and other public unitholders of the Partnership.

56.   Moreover, post-closure, CNX Midstream unitholders will be frozen out of any future benefit from their investment in CNX Midstream's bright future.

57.   It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for CNX at the expense of CNX Midstream unitholders, which clearly indicates that CNX Midstream unitholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Protection Mechanisms***

58.   The Merger Agreement contains certain provisions that unduly benefit CNX by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires CNX Midstream to pay a fee of $3,500,000. This fee will make the Partnership that much more expensive to acquire for potential purchasers. The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

59.   In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness. In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable. Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders. Here, the Proposed Transaction contains none of these protections. Rather the Merger Consideration is comprised entirely of CNX common stock exchanged at a ***fixed*** exchange ratio of 0.88 which means that CNX Midstream unitholders will receive 0.88 shares of CNX common stock as a portion of the Merger Consideration in exchange for each of their CNX Midstream shares, ***regardless of CNX's stock price at the close of the***

*transaction*. Thus, the consideration payable to CNX Midstream's unitholders is not insulated from fluctuations in CNX's stock price, and unitholders are left in the precarious position of not knowing whether the consideration payable to them will decline further. The fact that the Proposed Transaction does not guarantee CNX Midstream's public unitholders protection from fluctuations in CNX's per share price seems to be of no concern to the Defendants.

60.     Accordingly, the Partnership's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

61.     The breakdown of the benefits of the deal indicate that CNX and CNX insiders are the primary beneficiaries of the Proposed Transaction, not the Partnership's public unitholders. The Board and the GP's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public unitholders of CNX Midstream.

62.     Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction. Notably, Partnership insiders, including the Individual Defendants, currently own large, illiquid portions of Partnership units that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction. Partnership insiders own such units as follows:

| Name of Beneficial Owner | CNXM Common Units Beneficially Owned(1) | Percent of Class | CNXM Class B units Beneficially Owned(1) | Percent of Class | CNX Common Stock Beneficially Owned(1) | Percent of Class |
|---|---|---|---|---|---|---|
| Nicholas J. DeIuliis(2) | 20,100 | * | — | — | 2,448,519 | 1.3% |
| Raymond T. Betler | 18,556 | * | — | — | — | — |
| Chad A. Griffith | 33,745 | * | — | — | 81,797 | * |
| John E. Jackson | 38,151 | * | — | — | — | — |
| John A. Maher | 17,020 | * | — | — | — | — |
| Donald W. Rush | 5,929 | * | — | — | 229,968 | * |
| Hayley F. Scott | — | — | — | — | 12,531 | * |
| William N. Thorndike, Jr.(3)(4) | — | — | — | — | 453,310 | * |
| J. Palmer Clarkson | 6,750 | * | — | — | 188,254 | * |
| Maureen E. Lally-Green | 1,500 | — | — | — | 127,726 | * |
| Bernard Lanigan, Jr.(5) | 32,040 | * | — | — | 865,532 | * |
| Ian McGuire | — | — | — | — | 65,417 | * |
| Olayemi Akinkugbe | 6,247 | — | — | — | 42,654 | * |
| Stephanie L. Gill | 3,581 | * | — | — | 90,243 | * |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| All CNX directors and executive officers as a group | 145,205 | * | — | — | 4,593,420 | 2.5 | % |
| All General Partner directors and executive officers as a group | 172,395 | * | — | — | 2,772,815 | 1.5 | % |

63.     Notably the Registration Statement does not provide a breakdown of the amount of money each block of units represents under the Proposed Transaction, further obscuring the conflicts of interests from Plaintiff and other public unitholders of the Partnership.

64.     Thus, while the Merger is not in the best interest of CNX Midstream unitholders, it will produce lucrative benefits for the Partnership's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

65.     On August 12, 2020, the Defendants caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide the Partnership's unitholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Partnership's unitholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

66.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Partnership and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

   a.   The specific reasoning as to why no market check for other potentially interested counterparties was conducted; and

   b.   whether CNX Midstream and CNX entered into any sort of non-disclosure agreements as part of the sales process, if said agreement contained any standstill restrictions, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

*Omissions and/or Material Misrepresentations Concerning CNX Midstream's Financial Projections*

67.     The Registration Statement fails to provide material information concerning financial projections provided by CNX Midstream's management and relied upon by Intrepid in its analyses.  The Registration Statement discloses management-prepared financial projections for the Partnership which are materially misleading.  The Registration Statement indicates that in connection with the rendering of Intrepid's fairness opinions, Intrepid reviewed "certain non-public projected financial data and related assumptions of each of CNXM and CNX, as prepared and furnished to Intrepid by management of the General Partner and CNX, respectively, for four scenarios: (a) a base case, (b) a downside case, (c) an upside case 1, and (d) an upside case 2." Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that CNX Midstream management provided to the Intrepid.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

68.     With respect to the "Base Case," "Downside Case," "Upside Case 1," and "Upside Case 2" projections for CNX Midstream, the Registration Statement fails to provide material information concerning the financial projections prepared by CNX Midstream management. Specifically, the Registration Statement fails to disclose material line items for

       a.  Adjusted EBITDA;

       b.  Distributable Cash Flow;

       c.  Levered Free Cash Flow; and

       d.  Levered Free Cash Flow per Fully Diluted Unit Outstanding.

69.     The Registration Statement also provides non-GAAP financial metrics, including Adjusted EBITDA, Distributable Cash Flow, Levered Free Cash Flow, and Levered Free Cash

Flow per Fully Diluted Unit Outstanding, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

70.     This information is necessary to provide Partnership unitholders a complete and accurate picture of the sales process and its fairness.  Without this information, unitholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

71.     Without accurate projection data presented in the Registration Statement, Plaintiff and other unitholders of CNX Midstream are unable to properly evaluate the Partnership's true worth, the accuracy of Intrepid's financial analyses, or make an informed decision whether to vote their Partnership units in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning CNX's Financial Projections*

72.     The Registration Statement fails to provide material information concerning financial projections provided by CNX's management and relied upon by Intrepid in its analyses. The Registration Statement discloses management-prepared financial projections for the Partnership which are materially misleading.   The Registration Statement indicates that in connection with the rendering of Intrepid's fairness opinions, Intrepid reviewed "certain non-public projected financial data and related assumptions of each of CNXM and CNX, as prepared and furnished to Intrepid by management of the General Partner and CNX, respectively, for four scenarios: (a) a base case, (b) a downside case, (c) an upside case 1, and (d) an upside case 2." Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that CNX Midstream management provided to the Intrepid.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

73.     With respect to the "Base Case," "Downside Case," "Upside Case 1," and "Upside Case 2" projections for CNX, the Registration Statement fails to provide material information concerning the financial projections prepared by CNX management.  Specifically, the Registration Statement fails to disclose material line items for

    a.  Adjusted EBITDAX;

    b.  Levered Free Cash Flow;

    c.  Levered Free Cash Flow plus proportionate interest in CNXM Levered Free Cash Flow; and

    d.  Levered Free Cash Flow per Fully Diluted Share Outstanding.

74.     The Registration Statement also provides non-GAAP financial metrics, including Adjusted EBITDAX, Levered Free Cash Flow, Levered Free Cash Flow plus proportionate interest in CNXM Levered Free Cash Flow, and Levered Free Cash Flow per Fully Diluted Share Outstanding, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

75.     This information is necessary to provide Partnership unitholders a complete and accurate picture of the sales process and its fairness.  Without this information, unitholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

76.     Without accurate projection data presented in the Registration Statement, Plaintiff and other unitholders of CNX Midstream are unable to properly evaluate CNX's true worth (which is highly relevant given that the Merger Consideration is composed entirely of CNX stock), the accuracy of Intrepid's financial analyses, or make an informed decision whether to vote their Partnership units in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Intrepid*

77.     In the Registration Statement, Intrepid describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include

necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

78.    In regards to *CNXM Comparable Company Trading* analysis, the Registration Statement fails to disclose the specific benchmark multiples for each comparable company.

79.    In regards to the *CNXM Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

      a.  The specific inputs and assumptions used to calculate the a weighted average cost of capital range of 8.5% to 9.4%, including:

         i.  the Partnership's net debt as of June 20, 2020;

        ii.  The present value of CNXM's aggregate future IDR elimination payments to arrive at an implied equity value for CNXM.

      b.  The specific inputs and assumptions used to calculate the range of terminal EBIDTA multiples of 6.0x to 8.0x.

80.    In regards to *CNXM Precedent Transactions Analysis*, the Registration Statement Fails to disclose the following:

      a.  The specific date on which the transactions closed;

      b.  The value of each selected transaction; and

      c.  The specific benchmark multiples for each transaction.

81.    In regards to *CNXM Precedent Premiums Paid Analysis*, the Registration Statement Fails to disclose the specific benchmark multiples for each transaction.

82.    In regards to *CNX Comparable Company Trading Analysis*, the Registration Statement fails to disclose the following:

      a.  specific benchmark multiples for each comparable company; and

      b.  Why only five comparable companies were selected.

83.    In regards to the *CNX Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to calculate the a weighted average cost of capital range of 6.8% to 7.7%; and

      b.   The specific inputs and assumptions used to calculate the range of terminal EBIDTA multiples of 5.0x to 6.5x.

84.    These disclosures are critical for unitholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

85.    Without the omitted information identified above, CNX Midstream's public unitholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes unitholder value and serves their interests. Moreover, without the key financial information and related disclosures, CNX Midstream's public unitholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

86.    Plaintiff incorporates by reference, and repeats and realleges each and every allegation contained above, as though fully set forth herein.

87.    The Individual Defendants have breached and are breaching their fiduciary duties of good faith, loyalty, due care, fair dealing and candor owed to Plaintiff and the other public unitholders of CNX Midstream under Delaware law and the LPA, and have acted to put their personal interests ahead of the interests of CNX Midstream's public unitholders.

88.    By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and collectively, have acted unfairly and unreasonably toward Plaintiff and the other members of the Class by entering into the Merger Agreement and the Proposed Transaction.

89.     The Individual Defendants have breached their fiduciary duties owed to the unitholders of CNX Midstream and violated CNX Midstream's LPA because, among other reasons:

  a.  they failed to properly value CNX Midstream, and instead agreed to the fixed Exchange Ratio and inadequate cash consideration under the Proposed Transaction which reflect unfair and inadequate value for the Partnership;

  b.  they pursued the Proposed Transaction in order to further their own interests to the detriment of Plaintiff and the other unitholders;

  c.  they ignored or did not protect against the numerous conflicts of interest resulting from the Board member's own financial interests in the Proposed Transaction; and/or

  d.  they failed to take the necessary steps to comply with their fiduciary duties and CNX Midstream's LPA.

90.     The Individual Defendants' conduct constitutes gross negligence, recklessness, willful misconduct, bad faith or knowing violations of law that cannot be discharged under the waivers of the CNX Midstream LPA.

91.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the other Class members, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

92.     Plaintiff and the other Class members have no adequate remedy at law and are entitled to injunctive relief.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against the Partnership, Individual Defendants, and CNX

93.     Plaintiff incorporates by reference, and repeats and realleges each and every allegation contained above, as though fully set forth herein.

94.     In order to advance their own interests, Defendants CNX Midstream, CNX GP, CNX, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties to CNX Midstream unitholders. In so doing, CNX Midstream, CNX GP, CNX and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

95.     The conduct of Defendants CNX Midstream, CNX GP, CNX, and Merger Sub constitutes gross negligence, recklessness, willful misconduct, bad faith or knowing violations of law that cannot be discharged under the waivers of the CNX Midstream LPA.

96.     As a result, Plaintiff and the Class members are being irreparably harmed.

97.     Plaintiff and the other Class members have no adequate remedy at law and are entitled to injunctive relief.

### THIRD COUNT

### Breach of Implied Covenant of Good Faith and Fair Dealing

### Against Individual Defendants

98.     Plaintiff incorporates by reference, and repeats and realleges each and every allegation contained above, as though fully set forth herein.

99.     The Partnership's LPA bounds the Individual Defendants to an implied covenant of good faith and fair dealing, requiring the Individual Defendants to deal honestly, fairly and equitably with Plaintiff and the other Class members.

100.    The Individual Defendants have breached their implied covenant of good faith and fair dealing by engaging in, or facilitating, an unfair merger process and transaction.

101.    As a result of the Individual Defendants' breaches, Plaintiff and the other Class members will suffer irreparable injury.

102.    Plaintiff and the other Class members have no adequate remedy at law and are entitled to injunctive relief.

**FOURTH COUNT**

**Violations of Section 14(a) of the Exchange Act**

**Against Individual Defendants**

103.    Plaintiff repeats all previous allegations as if set forth in full herein.

104.    Defendants have disseminated the Registration Statement with the intention of soliciting unitholders to vote their shares in favor of the Proposed Transaction.

105.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

106.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

107.    The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

108.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

109.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

110.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the unitholder vote regarding the Proposed Transaction

## FIFTH COUNT

## Violations of Section 20(a) of the Exchange Act

## Against Individual Defendants

111.    Plaintiff repeats all previous allegations as if set forth in full herein.

112.    The Individual Defendants were privy to non-public information concerning the Partnership and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to the Partnership unitholders.

113.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Partnership in the Registration Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

114.   The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of CNX Midstream's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Partnership's unitholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

115.   The Individual Defendants acted as controlling persons of CNX Midstream within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Partnership, the Individual Defendants had the power and authority to cause CNX Midstream to engage in the wrongful conduct complained of herein. The Individual Defendants controlled CNX Midstream and all of its employees. As alleged above, CNX Midstream is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.   Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.   Enjoining the Proposed Transaction;

C.   In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the

fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence

a sale process that is reasonably designed to secure the best possible consideration for CNX

Midstream and obtain a transaction which is in the best interests of CNX Midstream and

its unitholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained

because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 24, 2020

**BRODSKY & SMITH, LLC**

By:

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile: (516) 741-0626

*Attorneys for Plaintiff*